No. 46,902

Sanders B. Clayton, *Appellee,* v. Alliance Mutual Casualty Company, *Appellant,* and Darrell D. Bedore. Rubye Clayton, *Appellee,* v. Alliance Mutual Casualty Company, *Appellant,* and Darrell D. Bedore. Max A. Clayton, *Appellee,* v. Alliance Mutual Casualty Company, *Appellant,* and Darrell D. Bedore.

(512 P. 2d 507)

Opinion filed July 14, 1973.

*James P. Mize*, of Salina, argued the cause, and *C. L. Clark, Aubrey G. Linville* and *C. Douglas Miller*, of Salina, were with him on the brief for appellant.

*Raymond L. Dahlberg*, of Great Bend, argued the cause, and *H. Lee Turner* and *Thomas C. Kelley*, of Great Bend, and *D. A. Hindman, Stanley Krysl* and *Wayne McCaslin*, guardian ad litem, of Stockton, were with him on the brief for appellees.

The opinion of the court was delivered by

FATZER, C. J.: At issue is the construction and application of the uninsured motorist provision of automobile insurance policies issued by the appellant, Alliance Mutual Casualty Company (Alliance) to Sanders B. Clayton (Sanders) and Max A. Clayton (Max), two of the appellees herein.

The facts are not in dispute. On October 15, 1968, while riding in an automobile owned and operated by Floyd D. Fix (Fix), the appellees, Sanders, Max, Joy Clayton and Rubye Clayton, were injured when the Fix automobile was struck by an automobile operated by Darrell D. Bedore (Bedore). Subsequently, it was discovered that Bedore did not carry liability insurance. However, Fix, Sanders, and Max held automobile liability insurance policies issued by Alliance which included uninsured motorist endorsements. The policy issued to Sanders covered two automobiles owned by him and the policy issued to Max covered a vehicle owned by him. The Claytons were of the same household, Sanders and Rubye being husband and wife; Max, their adult son, and Joy, their minor daughter.

Fix held a policy on his Buick automobile involved in the accident, which afforded uninsured motorist protection in limits of $10,000 and $20,000, and was the primary insurance on the accident. The entire $20,000 aggregate limit of the Fix policy was made available by Alliance after the accident, and the total amount was paid by Alliance to all of the persons occupying the Buick, including the appellees Sanders, Rubye, Max and Joy, receiving $1,300; $1,300; $2,000 and $500 respectively. In addition, Alliance paid the medical expenses of each of the appellees.

Subsequent to the receipt of payment under the Fix policy, the Claytons made demand upon Alliance for payment pursuant to the uninsured motorist endorsements on the policies held by Sanders and Max. Both policies held by the Claytons had aggregate limits of $20,000 per accident and contained identical provisions.

Alliance refused to make payment, asserting first that the Claytons had failed to make proof of claim and had not consented to submit medical authorizations and medical reports necessary for it to ascertain the character and degree of their injuries sustained in the accident. Proof of loss and medical authorizations were required pursuant to paragraph 9 of the CONDITIONS section of the policies.

Likewise, Alliance requested the Claytons arbitrate their claims under the policies pursuant to PART IV—PROTECTION AGAINST UNINSURED MOTORISTS which was a condition to payment under the uninsured motorist endorsement if either party elected not to agree upon a settlement of the claim. The Claytons refused to consent to arbitration and reasserted their claim against Alliance.

Thereafter, and on October 30, 1969, Sanders, Rubye, and Max each filed separate actions against Bedore and Alliance for damages resulting from the automobile accident. Alliance filed a motion to consolidate the actions which was sustained by the district court. Bedore wholly defaulted, and the Claytons filed a motion for default judgment against him with notice to Alliance.

On January 12, 1970, the appellees' motion for default came on for hearing. Bedore was not present, nor was he represented by counsel. Alliance was represented by counsel, and objected to any evidence in support of the Claytons' motion against Bedore for default as it would relate to Alliance. The district court granted Alliance seven days to answer the appellees' petitions and set up its defenses, and thereafter the following discussion was had:

"THE COURT:  .  .  .  I will hear testimony as to how much the judgment should be at this time.

"*The Court is ruling that this is limited to Bedore only.*

"MR. TURNER: *Yes, Your Honor.* I will call Reverend Clayton.

"MR. MIZE: Your Honor, may I be excused?

"THE COURT: Yes, sir.

"THE COURT: The record at this time shows that Mr. Mize is leaving. He has every right to stay, but he may also leave. He is not required to stay." (Emphasis supplied.)

Upon hearing evidence relating to the injuries sustained by Sanders, Rubye, and Max, the district court entered default judgment against Bedore and assessed damages to the appellees at $65,000, $30,000, and $15,000 respectively. The judgments for damages were in addition to the amounts allowed for medical expenses and court costs.

Thereafter and three days later on January 15, 1970, Alliance filed

its answer alleging policy defenses that the appellees had failed to do certain acts which were a condition precedent to the commencement of an action by the insured against the company. In particular, the answer asserted the Claytons had refused to make proof of claim, to sign medical authorizations, to permit inspection of medical reports and records relating to the injuries sustained and to arbitrate their claims. Further, Alliance contended the Claytons had not secured its written consent to be sued under the policy, and that the judgment against Bedore was not conclusive either as to liability or to damages because of the absence of consent to be sued. In addition, *Alliance's answer contained a request for a jury trial on the issue of loss sustained by each of the plaintiffs.*

On September 25, 1971, Alliance filed a motion requesting that Joy Clayton be joined as a plaintiff. The motion was sustained, and a guardian ad litem was appointed to represent her.

On January 7, 1971, Joy replied to Alliance's answer, and counterclaimed against it in the amount of $10,000, costs, and attorney's fees. On January 11, 1971, Alliance answered the counterclaim, and *reasserted its demand for a jury trial on the issue of loss sustained to each of the appellees.*

On February 1, 1971, a pretrial conference was held and the parties agreed that the interpretation of the provisions of the policies relied upon by Alliance and the enforcement of those provisions, being questions of law, would be tried by the district court. In addition, the issue of attorney's fees would be determined by the court. Alliance filed a motion to sever and try the issue of the appellees' damages to a jury. The motion by Alliance to sever and try the issues relating to Joy's injuries was sustained, and the motion to sever and try the issue of damages to Sanders, Rubye, and Max was taken under advisement. Subsequently, Joy's claim for damages was tried to a jury, and it returned a verdict in the sum of $2,500 upon which judgment was rendered.

On April 16, 1971, the district court, having taken under advisement the questions of law, entered the following judgments relating to the construction and application of the insurance policies. First, it held that Alliance was collaterally estopped by the judgment entered against Bedore, not only as to liability, but also as to damages. Second, it held that the policies were to be "stacked" in that the liability of Alliance would be $60,000. Third, that the appellees were not entitled to attorney's fees. Thereafter, on November 22,

1971, the district court issued its memorandum opinion setting forth the findings of fact and conclusions of law upon which Alliance has now appealed. The significant portions are quoted:

"The Court is now ruling on the matters raised by all parties until now.

"In addition to the facts hereinbefore set out, the Court adopts certain requested Findings from each of the parties as follows:"

\* \* \* \* \*

"(9) The judgments rendered by the Court on January 12, 1970, are binding as to both defendants, Darrell D. Bedore and Alliance Mutual Casualty Company.

"(a) Darrell D. Bedore was legally served with process as was the defendant, Alliance Mutual Casualty Company.

"(b) Alliance Mutual Casualty Company received a copy of the Motion for Default Judgment together with Notice of Hearing. Alliance thus had notice and, in fact, was in Court but chose not to defend the action on behalf of the defendant Bedore although it had notice, was present and had an opportunity to enter a defense. Alliance cannot now complain of the court's procedure.

"(c) By virtue of the Kansas case of Thompson v. Phillips Pipeline Co., 200 Kan. 669, 439 P. 2d 146, as well as the admission of Alliance that the Supreme Court would probably hold the arbitration clauses unenforceable, the defendant Alliance cannot demand arbitration as a condition precedent to the maintenance of this lawsuit by the plaintiffs.

"(d) To require the plaintiff to obtain the written consent of Alliance prior to filing their lawsuits is to place the plaintiffs in an absurd position and would allow the insurance company to force arbitration upon the insured.

"(e) The contention of Alliance that it did not have proper opportunity to prepare for defense is untenable in view of the fact that its adjuster commenced investigation the day after the accident and continued his investigation including investigation as to the nature and extent of the injuries of the persons riding in the automobile in question until approximately one year after the accident.

"(f) Alliance had full knowledge of the facts of the accident and the nature and extent of the plaintiffs' injuries by virtue of the fact that the entire amount of the Fix policy proceeds were paid to occupants of the Fix automobile after complete investigation and after Alliance knew the total amount of the medical expenses of the ten people in the Fix automobile.

"(g) The plaintiffs supplied Alliance with all information requested by Alliance or needed by Alliance in the evaluation of the injuries sustained by the plaintiffs. Full cooperation was exhibited by the plaintiffs through plaintiff Sanders B. Clayton as was acknowledged by representatives of Alliance at the hearing held on May 28, 1971. Such compliance and cooperation was present until such time as further compliance was obviously futile and the lack of good intentions on the part of Alliance was obvious.

"(h) The deposition testimony of Howard Frost and Ward Ferguson, representatives of Alliance, reveals that medical authorizations from all occupants of the vehicle had been obtained. This coupled with obvious knowledge on the part of Alliance and its representatives as to the medical expenses and the

nature and extent of the injuries of all persons in the automobile shows that further medical authorization prior to the commencement of the lawsuit would have been an exercise of futility on the part of the plaintiffs and is definitely not a condition precedent to the commencement of the actions by the plaintiffs.

"(i) By payment under the Fix policy of the proceeds under the uninsured motorist coverage, in whatever amounts, and by continued negotiation with the plaintiffs and continued investigation into the claim, Alliance is estopped to deny payment under the policies by reason of the policy defenses concerning conditions precedent to maintaining the lawsuit."

\* \* \* \* \* \*

"(10) Alliance Mutual Casualty Company is liable to the plaintiffs in the amount of $60,000, the total coverage under the uninsured motorist endorsement to the policy [policies] in question.

"(a) The plaintiffs paid a premium for the uninsured motorist coverage under policy No. FA759679 and No. FA806802 and by virtue of the Kansas Supreme Court decision of Sturdy v. Allied Mutual Insurance Co., 203 Kan. 783, 457 P. 2d 34, are entitled to the full benefits of the policies.

"(b) The 'other insurance' clauses are not enforceable for the reason that the two clauses are repugnant, one with the other, and the application of said clauses in the respective insurance policies would result in a windfall to the insurance company and would thwart the obvious legislative intent of the mandatory uninsured motorist coverage and such interpretation would be contrary to what a reasonable person in the position of the insured would understand the policy to mean.

"(c) To deny payment under the uninsured motorist coverage to the full extent of the stated coverage would result in a forefeiture of a benefit for which a premium had been paid by the insured."

On November 23, 1971, Alliance filed a motion for new trial or to alter judgment. On December 3, 1971, the same was overruled by the district court. Thereafter, Alliance perfected its appeal to this court, asserting numerous grounds of error. In the interest of brevity the court considers together the specifications of error relating to the construction, application and enforcement of the policy provisions relied upon by Alliance.

The appellant contends the district court erred in nullifying the "consent to sue" clause, the "arbitration" clause, and the "other insurance" clause. In addition, the appellant asserts the condition precedent stipulation of the policy as it relates to all conditions of coverage, including the "consent to sue" clause, the "proof of loss" clause, the "medical authorization" clause, and the "furnishing of medical reports" clause, is binding upon the appellees and the district court erred in failing to dismiss the actions as being prematurely filed.

This court has held the remedial legislation statutes requiring the offer of uninsured motorist coverage should be liberally con-

strued to provide the coverage intended by the Legislature. (*Winner v. Ratzlaff*, 211 Kan. 59, 505 P. 2d 606.) In determining the intention of the parties as to an insurance contract, the test is not what the insurer intends the printed language to mean, but what a reasonable person placed in the position of the insured would have understood the words to mean. (*Gowing v. Great Plains Mutual Ins. Co.*, 207 Kan. 78, 483 P. 2d 1072.) Where an insurance company desires to limit its liability under a policy, it should employ language which will distinctly reveal its purpose. Unclear and obscure clauses in a policy should not be permitted to defeat coverage which is expected by the insured and required by statute. (*Miller v. Farmers Mutual Automobile Ins. Co.*, 179 Kan. 50, 292 P. 2d 711; *Chicago, R. I. & Pac. Rld. Co. v. Aetna Ins. Co.*, 180 Kan. 730, 308 P. 2d 119; *Sturdy v. Allied Mutual Ins. Co.*, 203 Kan. 783, 457 P. 2d 34; *Gowing v. Great Plains Mutual Ins. Co.*, supra.)

K. S. A. 1972 Supp. 40-284 requires all policies of automobile insurance issued after July 1, 1968, the effective date of the statute, to contain uninsured motorist coverage. The statute is controlling as to the effect of the policy provisions relied upon by the appellants, and reads:

"No automobile liability insurance policy covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, unless the policy contains or has endorsed thereon, a provision with coverage limits not less than the limits for bodily injury or death set forth in K. S. A. 1967 Supp. 8-729, providing for payment of part or all sums which the insured or his legal representative shall be legally entitled to recover as damages from the uninsured owner or operator of the motor vehicle because of bodily injury, sickness or disease, including death, resulting therefrom, sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such motor vehicle, or providing for such payment irrespective of legal liability of the insured or any other person or organization: *Provided*, That the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage in writing: *Provided further*, That unless the insured named in the policy requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued him by the same insurer. Provisions affording such insurance protection against uninsured motorists issued in this state prior to the effective date of this act shall, when afforded by any authorized insurer, be deemed subject to the limits prescribed in this section, to satisfy the requirements of this section."

The appellants' argument, insofar as it relates to the policy provisions, essentially involves a reconciliation, if possible, between

the restrictive language of the insurance contract and the statute, affording unqualified uninsured motorists coverage.

Concerning the policy provisions relating to mandatory arbitration of disputes under the uninsured motorist coverage, this court finds no statutory or decisional authority for such a requirement. As we held in *Thompson v. Phillips Pipe Line Co.*, 200 Kan. 669, 438 P. 2d 146, the statutory law of Kansas with respect to arbitration contemplates submission and *arbitration only of existing disputes.* (K. S. A. 5-201.) Arbitration of disutes *in futuro,* under the common law, was revocable by either party.

The "arbitration" clause relied upon by Alliance reads:

"If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this Part, then, upon written demand of either, the matter or matters upon which such person and the company do not agree shall be settled by arbirtion in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and the company each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this Part."

The undisputed facts clearly show the Claytons expressly refused to submit to arbitration. This court has attempted to construe the purported mandatory requirement to arbitrate so that it will harmonize with the unqualified right to uninsured motorist coverage in K. S. A. 1972 Supp. 40-284, and has concluded the policy provisions are irreconcilable with the statutory requirement. That being the case, we hold the "arbitration" clause to be void and of no effect. (See Anno: Uninsured Motorist—Arbitration, 24 A. L. R. 2d 1325.)

Alliance next relies upon the "consent to sue" clause as a valid policy defense: the clause reads:

"No judgment against any person or organization alleged to be legally responsible for the bodily injury shall be conclusive, as between the insured and the company, of the issues of liability of such person or organization or of the amount of damages to which the insured is legally entitled unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the company."

The "consent to sue" clause is a stipulation that the insurance carrier must give written authorization to the insured as a condition precedent to the filing of an action to enforce the polcy coverage. The effect of construing the clause in a manner pro-

posed by Alliance would be to place the Claytons in an absurd position legally.

The insured (Claytons) must establish fault on the part of the uninsured tort feasor (Bedore) as a condition to enforcement of the coverage under the contract against the insurance carrier (Alliance). (*Winner v. Ratslaff*, supra.) The "consent to sue" clause was intended, where enforced, to be a notice requirement to the insurance carrier that an action was going to be commenced against an uninsured tort feasor wherein the insurance carrier would have liability or subrogation rights pursuant to the policy. (See Anno: Uninsured Motorist Clause—Settlement, 25 A. L. R. 3d 1275.) Measuring the "consent to sue" clause with the statutory requirement of unqualified uninsured motorist coverage, this court likewise holds the clause as written dilutes the character of coverage mandated by K. S. A. 1972 Supp. 40-284, and is void and of no effect.

Turning to the "other insurance" clause, the question involved in the instant case is whether the insurer's liability is limited to the amount of one policy (the Fix policy), or whether each policy contains its own liability which can be used to "stack" coverage up to the full amount of the injuries sustained. The clause reads:

"With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under Part IV shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

"Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of laibility hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance."

Prior to the enactment of K. S. A. 1972 Supp. 40-284, this court concluded the "stacking" of coverage to be lawful. (*Sturdy v. Allied Mutual Ins. Co.*, supra; *Rosson v. Allied Mutual Ins. Co.*, 203 Kan. 795, 457 P. 2d 42.) In *Sturdy* this court said:

"It must be borne in mind the purpose of uninsured motorist insurance is to provide compensation for personal injury to the innocent victim of the uninsured motorist. As to the named insured the coverage is a contract benefit for which he has paid. Here the damage to the insured has been determined and he now seeks indemnity for it. He is not seeking any windfall as a result of his injury but he is seeking full indemnity based on payment of two separate

premiums. Applying traditional rules of construction we think he is entitled to that coverage. Of the two constructions which could be placed on the limitation of coverage in this particular policy under these facts, this conclusion effectuates insurance as to each automobile mentioned in the policy and permits recovery rather than forfeiture of a benefit for which the insured has paid. Defendant seeks to avoid fully indemnifying its insured on what we believe to be an overly strict construction of its policy in its favor . . ." (l. c. 792, 793.)

The jurisdictions are split on the manner in which the statutes providing uninsured motorist coverage are construed in light of stipulations in the insurance contract that such coverage may be limited to "excess-escape" amounts beyond the amounts paid under the primary policy. (See Anno: Uninsured Motorists—"Other Insurance," 28 A. L. R. 3d 551.) The great weight of authority, however, is to give such restrictive insurance clauses no force and effect. Among the more persuasive decisions following the majority rule are *Blakeslee v. Farm Bureau Mut. Ins. Co.,* 32 Mich. App. 115, 188 N. W. 2d 216 [1971], affirmed 388 Mich. 464, 201 N. W. 2d 786 [1972]; *Stephens v. Allied Mut. Ins. Co.,* 182 Neb. 562, 571, 156 N. W. 2d 133, 139 [1968]. In *Blakeslee* the Michigan Court of Appeals said:

". . . The statute directs in mandatory terms that every policy of insurance provide the requisite uninsured motorist protection unless it is rejected in writing by the insured. The insurer is, therefore, no longer free, as he had been prior to the statute, to insert language restricting the coverage to less than the statute requires." (p. 120.)

In *Stephens* the Nebraska Supreme Court said:

"The general rule is that an insurer may not limit its liability under uninsured motorist coverage by setoffs or limitations through 'other insurance,' excess insurance, or medical payment reduction clauses, and this is true even when the setoff for the reduction is claimed with respect to a separate, independent policy of insurance (workmen's compensation) of other insured motorist coverage." (p. 571.)

Obviously, insurers have diligently sought means to limit their liability to the minimum requirement under safety responsibility acts. In Widiss, A Guide to Uninsured Motorist Coverage, Section 2.58, Professor Widiss outlines their efforts as follows:

". . . All of these provisions are written so as to limit the amount of payment by the uninsured motorist underwriter in combination with any other sources of indemnification to the maximum limit of the uninsured motorist coverage. The endorsement provisions are designed to achieve this result by reducing (or even eliminating) liability whenever more than one uninsured motorist coverage is applicable to the accident or whenever the insured is partly

indemnified from other sources, such as workmen's compensation. From the standpoint of the insured, these provisions apply to two related, but at the same time distinctly different factual situations: First, where the damages sustained by the claimant exceed the coverage available from any single source; Second, where at least one of the available sources of indemnification exceeds the total damages. Each of these endorsement provisions has been drafted so as to apply with qual force to reduce the insurer's liability regardless of whether the claimant has been fully indemnified."

In the recent case of *Van Tassel v. Horace Mann Insurance Company,* _____ Minn. _____, 207 N. W. 2d 348 [May 11, 1973], the court, speaking through Chief Justice Knutson, said:

"It seems to us that, in spite of the attempt by the insurer to limit its liability to one policy or to the amount recoverable under one policy, the fact that the legislature required an uninsured-motorist provision in all policies, added to the fact that a premium has been collected on each of the policies involved, should result in the policyholder's receiving what he paid for on each policy, up to the full amount of his damages. It is true that such holding results in permissible recovery exceeding what he would have received if the uninsured motorist had been insured for the minimum amount required under our Safety Responsibility Act. But if the question must be resolved on the basis of who gets a windfall, it seems more just that the insured who has paid a premium should get all he paid for rather than that the insurer should escape liability for that for which it collected a premium." (pp. 351, 352.)

This court has attempted to reconcile the "other insurance" clause in the instant case with K. S. A. 1972 Supp. 40-284 and with the majority rule cited above, and holds that such clause is void and of no effect, as being in violation of the plain terms of the statute.

Last, this court must reconcile the conditions contained in the "proof of loss," "medical authorization," and "furnishing of medical reports" clauses with K. S. A. 1972 Supp. 40-284 to ascertain their validity. The clauses relied upon by Alliance read:

"6. Action Against Company—Part 1. No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company."

\* \* \* \* \*

"Parts II, III and IV. No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy nor, under Part III, until thirty days after proof of loss is filed and the amount of loss is determined as provided in this policy."

\* \* \* \* \*

"9. Proof of Claim; Medical Reports—Part IV. As soon as practicable, the insured or other person making claim shall give to the company written proof

of claim, under oath if required, including full particulars of the nature and extent of the injuries, treatment, and other details entering into the determination of the amount payable. The insured and every other person making claim shall submit to examinations under oath by any person named by the company and subscribe the same, as often as may reasonably be required. Proof of claim shall be made upon forms furnished by the company unless the company shall have failed to furnish such forms within 15 days after receiving notice of claim.

"The injured person shall submit to physical examinations by physicians selected by the company when and as often as the company may reasonably require and he, or in the event of his incapacity his legal representative, or in the event of his death his legal representative or the person or persons entitled to sue therefor, shall upon each request from the company execute authorization to enable the company to obtain medical reports and copies of records."

As indicated, Alliance contends that such clauses are a condition precedent to the commencement of an action against it to enforce the uninsured motorist endorsement. The facts as found by the district court clearly indicate the Claytons complied with the policy requirements referred to above and that all information and medical reports were in Alliance's possession under the Fix policy settlement, and in the instant case. But regardless of those uncontroverted facts, this court cannot establish a reasonable basis upon which such clauses may be enforced. While we are mindful of the need for such information to facilitate settlement, we are of the opinion such provisions may not be used by the insurance carrier to avoid liability. The need for such provisions is questionable in light of the detailed procedures available to the insurer to discover the degree and character of injuries to the uninsured motorist under our code of civil procedure, and the detailed requests for admissions in the record of the instant case indicate Alliance had counsel who was aware of such discovery procedures. Under such circumstances, this court must likewise hold that the "proof of loss" clause, the "medical authorization" clause, and the "furnishing of medical reports" clause, as a condition precedent to enforcement of the uninsured motorist endorsement of the Alliance policies are void and of no effect as being an attempt to dilute the requirements of K. S. A. 1972 Supp. 40-284.

The final contention raised by Alliance involves the district court's holding that the judgment against Bedore was binding upon Alliance. It asserts it was entitled to a jury trial upon the question of the amount and degree of damages sustained by Sanders, Rubye, and Max, and it was not collaterally estopped from challenging the damage judgment entered by the district court with respect to Bedore.

Before ruling on the contention, it should be noted the appellees' motion for default came on for hearing January 12, 1970. Alliance was represented by counsel and timely objected to the entry of any evidence at that hearing which would relate to it. The district court then granted Alliance seven additional days to answer the petitions filed by appellees Sanders, Rubye, and Max, and proceeded to hear testimony as to the amount of judgment to be rendered. The record clearly indicates the district court's ruling on damages ". . . is limited to Bedore only." Likewise, Alliance filed its answer within the time allowed by the district court and endorsed thereon pursuant to K. S. A. 60-238 (b) was a demand for *a jury trial on the issue of loss sustained by each of the plaintiffs*.

On April 16, 1971, the district court held Alliance was bound not only as to Bedore's liability, but also as to damages.

Under the facts and circumstances of this case, it is the conclusion of the court that Alliance was not collaterally estopped from challenging the damage judgment against Bedore. The district court permitted counsel for Alliance to leave the hearing after making the statement that any judgment as to damages would be limited only as to Bedore. That being the case, the district court cannot then take an inconsistent position with its previous acts. The denial of a jury trial as to the issue of amount of bodily injury damage sustained by Sanders, Rubye and Max compels a reversal of the judgment rendered by the district court.

The case is reversed and remanded to the district court with directions to grant Alliance a jury trial on the issue of bodily injury damages as to Sanders, Rubye and Max. In all other respects, including the verdict as to Joy, the judgment is affirmed.

It is so ordered.