No. 12263

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

---

BURLINGTON NORTHERN INC.,
successor to Great Northern Railway
Company, a corporation,

Plaintiff and Appellant,

-vs-

FLATHEAD COUNTY, a political subdivision
of the State of Montana et al.,

Defendants and Respondents.

---

Appeal from:   District Court of the Eleventh Judicial District,
Honorable Robert Sykes, Judge presiding.

Counsel of Record:

For Appellant:

Gough, Booth, Shanahan and Johnson, Helena, Montana.
Ward Shanahan argued, Helena, Montana.

For Respondents:

Baldwin and Jellison, Kalispell, Montana.
M. Dean Jellison argued, Kalispell, Montana.

---

Submitted:   April 24, 1973

Decided: JUL 18 1973

Filed: JUL 13 1973

*Thomas J. Kearney*
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a summary judgment entered in the district court of the eleventh judicial district, Flathead County, in an action challenging a 1968 county airport levy. The trial court held for the county and plaintiff railroad company appeals.

The Board of County Commissioners of Flathead County in its 1968-69 budget adopted the following budget for the county airport fund:

"Taxable Valuation $41,987,688

"#215 Airport Fund

| "Total Expenditures last year | $29,833 |
|---|---|
| Last Year's budget | $67,942 |
| Receipts Last Year from Taxes | |
| Estimated Expenditures this year | |
| | $41,035 |
| Capital Outlay | $29,000 |
| Less 119.13 OW | |
| Total | $70,035 |

| Cash in Fund | $42,226.03 |
|---|---|
| Estimated Receipts | $ 6,701 |
| Total | $48,808 |

Tax Levy .51
Mills required to raise balance  $21,227".

At the time the budget was considered there was an estimated expenditure of $41,035 and a capital outlay expenditure of $29,000. When the budget was adopted and the levy fixed, there was cash on hand in the amount of $42,226.03 less an outstanding warrant of $119.13, and estimated receipts of $6,701. The tax requirements for the following year were set at a levy of .51 mills (2 mills being the maximum) which raised the necessary $21,227 for the budget. The proposed capital outlay expenditure of some $21,227 was to be used in that fiscal year to remodel an already existing airport building which, appellant argues, created a debt or liability exceeding the sum of $10,000 in violation of Art. XIII, Sec. 5, Montana Constitution, and sections 16-807 and 16-1904, R.C.M. 1947. Appellant paid its taxes under protest.

Respondent county argues it makes no difference whether the capital outlay expenditure relates to an existing facility (as the trial court found) or a new facility. Further, it makes no difference whether a part of the money proposed to be expended in the 1968-69 budget was money left over from the previous year or money to be raised by taxes during the current year, if the total amount proposed to be spent was less than the amount that would be raised by the permissible mill levy during the current year.

The only issue on appeal is whether or not the trial court erred in determining that a capital outlay expenditure for an existing facility could be discharged by the county by applying "cash on hand" first to the expenditure, and then by using the available mill levy to raise the balance needed for the Flathead County airport operation for the fiscal year ending June 30, 1969.

We find the trial court erred in reaching its conclusion that the financing procedure followed by respondent county was proper.

Clearly this type of budget procedure violates sections 16-1901 through 16-1911, R.C.M. 1947, (County Budget System) enacted to give the taxpayer notice as to how his taxes were to be spent and protection from the improper use of tax monies. Section 16-1904(2) clearly provides that the cash balance in any fund must be applied first against ordinary expenses in the budget. "Funds on hand" at the end of a fiscal year are to be used to reduce the tax requirements of the next fiscal year. Capital outlay items must be singled out for taxpayers' consideration. Section 16-1902, R.C.M. 1947, requires:

> "* * * Expenditures for capital outlay shall set forth and describe each object of expenditure separately. * * *"

The procedure also violates Art. XIII, Sec. 5, Montana Constitution, which provides in pertinent part:

> "No county shall incur any indebtedness or liability for any single purpose to an amount exceeding ten thousand dollars ($10,000) without the approval of a majority of the electors thereof, voting at an election to be provided by law".

- 3 -

This constitutional provision has been executed by section 16-807, R.C.M. 1947, which provides:

> "Limit of Indebtedness. No county must become indebted in any manner for any purpose to an amount, including existing indebtedness, in the aggregate exceeding five per centum of the value of the taxable property therein, to be ascertained by the last assessment for state and county taxes previous to the incurring of such indebtedness, and all bonds or obligations in excess of such amount given by or on behalf of such county are void. No county must incur any indebtedness or liability for any single purpose to an amount exceeding ten thousand dollars without the approval of a majority of the electors thereof voting at an election to be provided by law."

Here, there can be no question but that the action taken by the Board of County Commissioners in contracting to remodel the airport building created an "indebtedness or liability" within the meaning of both the constitutional and statutory provisions, and was for a "single purpose". State ex rel. Diederichs v. Board of Trustees, 91 Mont. 300, 7 P.2d 543; State ex rel. Ward v. Anderson, 158 Mont. 279, 491 P.2d 868.

In effect, what was done here by respondent county was to over levy for the airport fund in 1967 and create a fund to which it made the necessary levy the following year and thereby accomplished the remodeling of the airport building without allowing the electors to vote on it. At that time Montana law did not allow any accumulation of a "reserve fund". Section 1-804, R.C.M. 1947, provided:

> "1-804. Tax levy for establishment and operation of airports. For the purpose of establishing, constructing, equipping, maintaining and operating airports and landing fields under the provisions of this act the county commissioners of [or] the city or town council may each year assess and levy in addition to the annual levy for general administrative purposes, a tax of not to exceed two (2) mills on the dollar of taxable value of the property of said county, city or town. In the event of a jointly established airport or landing field, the county commissioners and the council or councils involved shall determine in advance the levy necessary for such purposes and the proportion each political subdivision joining in the venture shall pay, based upon the benefits it is determined each shall derive from the project. Provided that if it be found that the levy hereby authorized will be insufficient for the purposes herein enumerated, the commissioners and councils acting are hereby authorized and empowered to contract an indebtedness on behalf of

such county, city or town, as the case may be, upon the credit thereof by borrowing money or issuing bonds for such purposes, provided that no money may be borrowed and no bonds may be issued for such purpose until the proposition has been submitted to the taxpayers affected thereby, and a majority vote to be cast therefor." (Emphasis added).

In 1969, section 1-804, R.C.M. 1947, was amended to allow the creation of a "reserve fund" but only for the use by the county to "resurface, overlay, or improve existing runways, taxiways and ramps". Even under this amendment, the county could not have financed the remodeling of the administration building in the manner which it did.

There was, as shown previously, some $42,000 left over from the previous year, the total expenditure the previous year was $29,833 out of a budget of $67,942. Very, very clearly, the county had created a "reserve fund" by the simple device of over-levying a tax. The county extended a levy against the taxpayers for a capital outlay expenditure and spread it over two years; and thus, by their bootstraps picked themselves up and jumped over the constitutional limitation of Art. XIII, Sec. 5, and the statutory provisions of sections 16-807 and 16-1904, R.C.M. 1947.

This "bootstrap" operation then allowed the county, under the rationale of State ex rel. Diederichs v. Board of Trustees, 91 Mont. 300, 7 P.2d 543, to claim that no "indebtedness or liability" was created because the money was already on hand. In Diederichs, the money on hand came from insurance proceeds as a result of a fire which destroyed the school building for which voters had already approved bond financing. In the instant case the funds on hand came about by violating the county budget laws.

This decision is consistent with the rationale of Cause No. 12390, Burlington Northern Inc. v. Richland County, decided this same date.

- 5 -

The judgment of the district court is reversed and it is directed to enter judgment for appellant.

_____
                                        Associate Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Associate Justices.

Mr. Justice Gene B. Daly and Mr. Justice Frank I. Haswell dissenting:

We respectfully dissent to the view of the majority. The text of the majority opinion concludes with the statement: "This decision is consistent with the rationale of Cause No. 12390, Burlington Northern Inc. v. Richland County, decided this same date." We agree with the rationale applied in the Richland County case and that the rationale applied in the present case is consistent with that of the Richland County case, however, the facts of the present case are in no way consistent with those of the Richland County case.

In the Richland County case an "indebtedness or liability" of $200,000 from the State Aeronautics Board was undertaken by the Sidney-Richland County Airport Commission for the "single purpose" of airport runway construction. Repayment of principal and interest was to be made by the county from the proceeds of a one and one-half mill levy to be reapplied until repayment was complete.

In the present case the Flathead County Board of Commissioners approved expenditure of about $70,000 for remodeling work on the airport administration building. Funds remaining from previous years' budgets in the amount of about $42,000 and a one-half mill levy effected to provide about $29,000 made up the total expenditure. The county is permitted under section 1-804, R.C.M. 1947, to impose a "permissive" two mill levy "for the purpose of establishing, constructing, equipping, maintaining and operating airports * * *". (Emphasis supplied). The record indicates that had the maximum permissive two mill airport levy been effected, over $80,000 would have been raised thereby. The permissive one-half mill airport levy which was effected, together with remaining funds, provided the total amount of authorized expenditure. Consequently, there was never any "indebtedness or liability" incurred by Flathead County within the meaning of

Art. XIII, Sec. 5, of the Montana Constitution.

The application of the constitutional provision contained in Art. XIII, Sec. 5, by the majority in the present case, in our view, is incorrect, as pointed out in State ex rel. Diederichs v. Board of Trustees, 91 Mont. 300, 305, 7 P.2d 543, while quoting with approval language from State ex rel. Rankin v. Board of Examiners, 59 Mont. 557, 197 P. 988, 992:

> "'In construing our constitutional provision applicable, we have under consideration the meaning of the words "debt or liability," and in our view the prohibition intended by these words is the creation of a debt or obligation of the state in excess of cash on hand and revenue provided for' * * *. * * * No provision of law has been made for submitting to the electors the question of the expenditure of cash on hand, raised for a definite purpose, in excess of $10,000; and by the lawmakers this constitutional restriction has been interpreted as a restriction upon the borrowing of money, as by statute a method is provided for the manner of submitting to the people the question of borrowing money in excess of $10,000." (Emphasis supplied).

We would affirm the summary judgment entered by the district court.

_Gene B. Daly_

_Frank I. Haswell_

Associate Justices.