**ST. PAUL FIRE & MARINE INSURANCE COMPANY, Plaintiff-Appellee,**

v.

**The MEDICAL PROTECTIVE COMPANY, Defendant-Appellant.**

No. 80–2340.

United States Court of Appeals, Tenth Circuit.

Oct. 18, 1982.

Richard T. Foster, Wichita, Kan. (William Tinker, Wichita, Kan., on the brief), of Mc-Donald, Tinker, Skaer, Quinn & Herrington, Wichita, Kan., for defendant-appellant.

H. W. Fanning, Wichita, Kan. (Harker E. Russell, Wichita, Kan., with him on the brief), of Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, Kan., for plaintiff-appellee.

Before DOYLE, McKAY and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

The appeal in this diversity case arises out of a dispute between two insurance companies over which has to pay portions of a medical malpractice settlement against a professional corporation and a doctor it employed. St. Paul Fire & Marine Insurance Company (St. Paul), which had written excess liability policies, paid $300,000 of the $400,000 settlement, and brought suit against The Medical Protective Company (Medical Protective) to recover $200,000 of the amount paid. The trial court ruled in favor of St. Paul, construing the insurance contracts to require $300,000 to be paid by Medical Protective before any amount was payable from the excess policies.

During the time period at issue, Women's Clinic, P.A., a professional corporation, employed three doctors: Ronald D. Linhardt, J. Gilleran Kendrick, and Charles P. McCoy. Although the corporation and all three doctors were sued in the malpractice action, the claim was based upon services rendered by Dr. Linhardt, and the settlement judgment was entered only against Dr. Linhardt and the professional corporation. Five insurance policies were potentially applicable to satisfy the malpractice claim. Medical Protective wrote three base policies with limits of $100,000—one each on Dr. Linhardt, Dr. Kendrick and Dr. McCoy. Although none of the base policies listed any of the other doctors, each declared by endorsement that "[t]his policy extends to and covers Kendrick, Nyberg, and McCoy, P.A. [now, by change of name, Women's Clinic, P.A.] in any claim hereunder." St. Paul wrote two excess policies—one each on Dr. Kendrick and Dr. McCoy. Each excess policy listed the professional corporation as an additional insured.

■ Medical Protective argues that its liability for the $400,000 settlement is limited to the $100,000 payable under the Linhardt policy. St. Paul contends that the Kendrick and McCoy policies must be exhausted before resort to the excess policies, and therefore, that Medical Protective is liable for $300,000 of the settlement. St. Paul relies on a section contained in its policies which declares that St. Paul's liability

"shall be only for the ultimate net loss in excess of the 'underlying limits' defined as the greater of:

(1) an amount equal to the limit(s) of liability indicated beside underlying policy(ies) listed or insurance described in Schedule A hereof, plus the applica-

ble limits of any other underlying insurance collectible by the Insured."

St. Paul prevailed below because the trial court determined that Medical Protective's policies on Kendrick and McCoy constituted "other underlying insurance collectible by the Insured." Because we agree with that determination, we affirm.

█ Medical Protective's policies state, "This policy extends to and covers [the professional corporation] in any claim hereunder." The district court construed this language to mean that the professional corporation was insured under the Medical Protective policies on Drs. Kendrick and McCoy, and therefore that each policy constituted "other underlying insurance collectible by the Insured."

Medical Protective asserts that the policies were only intended to cover the professional corporation in the event of claims arising against the named doctor. It argues that the policies' prohibition against partnership liability supports its reading.[1] We do not find Medical Protective's argument persuasive. First, the corporation is not in a partnership relation with the doctors. Second, the policies expressly state that they cover damages based on professional services rendered "by the insured or any other person, in the practice of the insured's profession." We believe this language contemplates liability for the negligence of employees of the corporation and is, therefore, inconsistent with Medical Protective's assertion that the corporation's liability derives solely from the conduct of the named physician. Exception 4 is also inconsistent with Medical Protective's interpretation. That exception addresses the corporate-employer/physician-employee relation

directly, declaring, "this policy does not cover . . . any liability growing out of services rendered by any physician or dentist regularly employed by the Insured, unless such employee is covered as an Insured of this Company." As the trial court noted, Dr. Linhardt is an "Insured of this Company" under the separate policy issued in his name. Had the policy excluded liability for services of a regularly employed physician unless the employee were listed as an "Insured *under this policy*," the result would likely be different, *cf. McNemee v. Farmers Insurance Group*, 228 Kan. 211, 612 P.2d 645 (1980) (giving effect to specific language designed to prevent stacking of personal injury protection benefits in an automobile insurance policy); but that language was not used. Finally, although Medical Protective argues that coverage in the situation before us was not intended, the subjective intent of the insurer does not control the interpretation of the contract. While the instant dispute is between two insurance companies, the result should be the same as if the professional corporation had no excess coverage policy and was suing Medical Protective under its base policies. We interpret the policy under the following standard:

"In determining the intention of the parties as to an insurance contract, the test is not what the insurer intends the printed language to mean, but what a reasonable person placed in the position of the insured would have understood the words to mean. Where an insurance company desires to limit its liability under a policy, it should employ language which will distinctly reveal its purpose."

---

1. The relevant provisions of the Medical Protective policies state as follows:

"[T]he Company hereby agrees to DEFEND and PAY DAMAGES, in the name and on behalf of the Insured or his estate,

A. IN ANY CLAIM FOR DAMAGES, AT ANY TIME FILED, BASED ON PROFESSIONAL SERVICES RENDERED OR WHICH SHOULD HAVE BEEN RENDERED, BY THE INSURED OR ANY OTHER PERSON, IN THE PRACTICE OF THE INSURED'S PROFESSION (INCLUDING INJU-

RY SUSTAINED BY ANY PATIENT OR ANYONE ACCOMPANYING A PATIENT WHILE IN THE INSURED'S OFFICE), DURING THE TERM OF THIS POLICY; EXCEPT this policy does not cover

. . . . .

3 any partnership liability of the Insured;
4 any liability growing out of services rendered by any physician or dentist regularly employed by the Insured, unless such employee is covered as an Insured of this Company."

*Clayton v. Alliance Mutual Casualty Co.,* 212 Kan. 640, 646, 512 P.2d 507, 512 (1973) (citation omitted). We think the district court's construction of the Medical Protective policies is correct.

Apparently neither Medical Protective nor St. Paul anticipated the problem facing us. However, St. Paul had no policy on Dr. Linhardt for which it received a separate premium. Medical Protective received premiums for base policies on all three physician employees. The language in the Medical Protective policy excluding employer liability unless a physician employee is an "Insured of this Company" seems to encourage a corporation to acquire Medical Protective policies on all physician employees of the corporation. Medical Protective presumably has received the benefit of such language; it cannot now be heard to disown the burdens associated with it.

The judgment of the district court, 504 F.Supp. 877, is AFFIRMED.