No. 47,911

VIVIAN C. VAN HOOZER, *Plaintiff-Appellee*, v. FARMERS INSURANCE EXCHANGE, *Defendant-Appellant.*

(549 P. 2d 1354)

Opinion filed May 8, 1976.

*John T. Flannagan,* of Payne & Jones, Chartered, of Olathe, argued the cause, and *Robert P. Anderson,* of the same firm, was with him on the brief for the appellant.

*Marion W. Chipman,* of Olathe, argued the cause, and *Roger D. Stanton* and *David K. Fromme,* of Weeks, Thomas, Lysaught, Bingham & Mustain, Chartered, of Overland Park, were with him on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.: This is an action brought by the surviving spouse of Thomas H. Van Hoozer to recover from the defendant insurance company under two automobile insurance policies, each providing uninsured motorist coverage. The insurance company appeals from the findings, preliminary rulings, and final judgment of the trial court. Plaintiff cross-appeals from the trial court's denial of her motion for the assessment of attorneys' fees.

On February 21, 1967, Thomas H. Van Hoozer made application to the defendant, Farmers Insurance Exchange (hereinafter referred to as Farmers or defendant), through its agent, Leon Archer, for a policy of insurance on a 1963 Volkswagen. At the same time, Van Hoozer applied to Farmers for a policy of insurance to cover a 1965 Volkswagen. The later vehicle was titled in the name of his wife, the plaintiff herein, Vivian Van Hoozer. A policy was issued by Farmers on each vehicle. As originally issued, neither policy was written to cover the risk of uninsured motorists. Both policies were identical standard form insurance contracts set out in a twelve-page booklet. The policies provided that coverage would extend for the standard six-month period at which time they had to be renewed. In accordance with this provision, both policies were subsequently renewed until February, 1968.

On November 15, 1967, Van Hoozer made written application with Farmers to change the 1963 Volkswagen policy to provide coverage for a 1963 Jaguar. The change was duly recorded by Farmers.

When the six-month period ended in February, 1968, Van Hoozer decided to renew each policy for a period of three months, i. e., until May 21, 1968. Two weeks before the policies were to expire, Farmers mailed an "Avoid Cancellation" notice to Van Hoozer, reminding him that a premium would be due on May 21, 1968, and failure to renew his policies would result in their cancellation.

In the month of March, 1968, Van Hoozer learned from his physician that he had leukemia.

On May 15, 1968, at approximately 9:00 a. m., Van Hoozer went to the office of the Farmers agent for the purpose of extending the coverage of the two policies. In addition to renewing the policy on the 1963 Jaguar for the period from May 15 to August 21, 1968, Van Hoozer acquired additional medical coverage of $1,000 per person, a $15,000 accidental death endorsement, and uninsured motorist coverage. He also added uninsured motorist coverage to the 1965 Volkswagen policy and extended its term of coverage. He was charged additional premiums for the uninsured motorist coverage on the policies and was given a receipt after paying the agent. He was also given an endorsement relating to the uninsured motorist coverage.

After having completed the foregoing policy changes, Van Hoozer returned to his home where he placed on his dresser the receipt, the "Avoid Cancellation" notice, and the endorsement increasing limits.

Later that morning, while driving his Jaguar to Ottawa, Kansas, on a business trip, he was killed on the highway in a head-on collision with another vehicle. Subsequent investigation disclosed that the driver of the other vehicle, Sammy J. Downey, was intoxicated at the time of the accident and that he had been driving north in the southbound lanes of the four-lane interstate highway. Downey was also killed in the accident. A car driven by a third person, Vera Clark, barely escaped being hit a few seconds before the collision by pulling off the highway when she saw the Downey vehicle approaching. There was no evidence of any evasive action taken by Van Hoozer, nor were there any skid marks left by his vehicle.

Van Hoozer's applications for changes in the two insurance policies were subsequently sent by the Farmers agent to the regional office in the usual course of business. As was customary, the regional office processed the policies and mailed declaration sheets and an invoice to the deceased on or after May 27, 1968.

Following the death of her husband, plaintiff Vivian Van Hoozer received payment from Farmers in the amount of $15,000 under the provisions of the accidental death endorsement coverage on the Jaguar. In addition, Mrs. Van Hoozer collected workmen's compensation death benefits in the amount of $14,000 from St. Paul Fire and Marine Insurance Company, the workmen's compensation insurance carrier for Van Hoozer's employer.

On August 12, 1968, Mrs. Van Hoozer wrote to the claims department of the defendant insurance company, demanding payment in the amount of $10,000 under the uninsured motorist coverage added to the Jaguar policy. The letter claimed the driver of the other vehicle, Downey, was an uninsured motorist. One week later an attorney for Farmers responded to her claim, denying coverage because of the payment of workmen's compensation benefits. Reliance was placed upon Part II, subsection (c) of the policy and exclusion (4) under Part II, which directed that the "loss payable" shall be reduced by any workmen's compensation benefits received.

A further demand for payment of the uninsured motorist benefits was made by Mrs. Van Hoozer on August 25, 1968, at which time she called defendant's attention to the newly adopted uninsured motorist statute. (K. S. A. 40-284.) Mrs. Van Hoozer indicated it was her understanding that under the new act it would not make any difference whether she received workmen's compensation benefits. Once again, Farmers refused to make payment, claiming

the new uninsured motorist statute did not affect the policy provisions.

Mrs. Van Hoozer then took her claim to the office of the Commissioner of Insurance and further correspondence was had concerning the validity of her claim. On November 14, 1968, the Commissioner's office wrote to Farmers giving its interpretation of the effect of the new statute and advising Farmers that in its opinion the plaintiff had a valid claim. Farmers nonetheless persisted in its denial of coverage. and further asserted the new uninsured motorist statute was not applicable to the Van Hoozer policy, inasmuch as the statute did not become effective until July 1, 1968, subsequent to the death of the insured.

Convinced that Farmers' refusal to pay was final, Mrs. Van Hoozer brought suit against the defendant insurance company on April 17, 1970, demanding judgment for the $10,000 uninsured motorist coverage in the Jaguar policy. Farmers responded to the petition by filing a motion for summary judgment. Shortly thereafter, plaintiff filed a motion for permission to file an amended petition to include a second count, praying for an additional $10,000 under the uninsured motorist coverage of the 1965 Volkswagen policy. The motion to amend was granted and the amended petition was filed by plaintiff.

On November 19, 1970, the trial court overruled defendant's motion for summary judgment. Defendant filed its answer to the amended petition on December 9, 1970, and discovery followed. On November 28, 1972, plaintiff filed a motion for summary judgment. A pretrial conference was held on January 8, 1973, at which time the legal questions were framed for submission to the court. Defendant was granted leave over plaintiff's objection to amend its answer so as to include the defense of contributory negligence.

On May 4, 1973, the trial court issued its memorandum decision granting partial summary judgment for plaintiff. The trial court's decision resolved several key legal issues in plaintiff's favor and it determined as a matter of law that the Kansas uninsured motorist statute, K. S. A. 40-284, applied to the policies despite the fact it did not officially become effective until after the death of Van Hoozer. Defendant immediately filed a notice of appeal to this court, which it later agreed to dismiss since the trial court's decision was not a final appealable order.

After further discovery the parties appeared before the trial court on August 3, 1973, for a pretrial conference. At this hearing de-

fendant raised for the first time the issue of whether the driver of the other vehicle, Downey, was an uninsured motorist. Pursuant to plaintiff's motion for summary judgment the trial court ruled as a matter of law that Downey was an uninsured motorist and that the issue of his negligence and whether it was the proximate cause of Van Hoozer's death should be submitted to the jury as questions of fact. Trial proceeded before the jury. Following plaintiff's presentation of evidence defendant moved for a directed verdict which was denied, and after due deliberation the jury returned a verdict in favor of plaintiff in the amount of $20,000. Defendant's posttrial motions were all denied as was plaintiff's motion for the assessment of attorneys' fees. A timely appeal was filed by defendant and plaintiff filed a cross-appeal from the trial court's denial of attorneys' fees.

While defendant asserts numerous points of error requiring a reversal of the lower court's judgment, it concedes the principal question is whether K. S. A. 40-284 applies to the facts of the case. As evidenced by recent appellate court decisions, construction of automobile liability policies providing uninsured motorist coverage has been materially affected by the provisions of the mandatory statute and the policy changes inherent therein. Uninsured motorist coverage was developed as a means of protecting the non-negligent motorist where the tortfeasor is uninsured. The typical clause provides a motorist who carries a standard automobile liability policy with rights against his own insurance company equal to those he would have against the uninsured tortfeasor. The purpose of such coverage was discussed by this court in *Winner v. Ratzlaff*, 211 Kan. 59, 505 P. 2d 606, wherein we said:

". . . The purpose of legislation mandating the offer of uninsured motorist coverage is to fill the gap inherent in motor vehicle financial responsibility and compulsory insurance legislation and this coverage is intended to provide recompense to innocent persons who are damaged through the wrongful conduct of motorists who, because they are uninsured and not financially responsible, cannot be made to respond in damages. . . ." (pp. 63, 64.)

In 1968, the Kansas legislature enacted K. S. A. 40-284, which is generally referred to as the mandatory uninsured motorist statute. The statute reads:

"No automobile liability insurance policy covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, unless the policy contains or has endorsed thereon, a provision with coverage limits not less than the limits for bodily

injury or death set forth in K. S. A. 1967 Supp. 8-729, providing for payment of part or all sums which the insured or his legal representative shall be legally entitled to recover as damages from the uninsured owner or operator of the motor vehicle because of bodily injury, sickness or disease, including death, resulting therefrom, sustained by the insured, caused by accident and arising out of ownership, maintenance or use of such motor vehicle, or providing for such payment irrespective of legal liability of the insured or any other person or organization. *Provided,* That the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage in writing: *Provided further,* That unless the insured named in the policy requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued him by the same insurer. Provisions affording such insurance protection against uninsured motorists issued in this state prior to the effective date of this act shall, when afforded by any authorized insurer, be deemed, subject to the limits prescribed in this section, to satisfy the requirements of this section."

Prior to the enactment of 40-284, uninsured motorist coverage was permissible at the option of the purchaser of an automobile liability policy. (See K. S. A. 40-1110 [Corrick], now repealed.) Our present statute is considered mandatory in the sense that insurance companies must offer uninsured motorist coverage with every automobile liability policy issued in this state, but the insured may reject the offer in writing. The required minimum coverage limits were set at $10,000 per person and $20,000 per accident as provided in the Motor Vehicle Safety Responsibility Act, K. S. A. 1967 Supp. 8-729, since repealed. For a more detailed discussion of the various aspects of uninsured motorist coverage see Widiss, A Guide to Uninsured Motorist Coverage; 40 J. B. A. K. 199 and 41 J. B. A. K. 19, Uninsured Motorist Coverage, by Alan I. Widiss; and Pretzel, Uninsured Motorists.

I. Application of K. S. A. 40-284

It is generally conceded by both parties that this case turns on whether the mandatory uninsured motorist statute is to be applied in construing the insurance policies in question. The dispute over application of the statute arises from the fact K. S. A. 40-284 did not become effective until July 1, 1968; whereas, the policies were issued and the accident occurred on May 15, 1968, more than a month prior to the effective date of the statute. Ordinarily, an uninsured motorist statute would not apply to insurance policies issued prior to the effective date of the statute. (See, *Sturdy v. Allied Mutual Ins. Co.,* 203 Kan. 783, 457 P. 2d 34; Couch on Insurance 2d, § 45:622, p. 569; *Ball v. California State Auto. Assn,*

*Inter-Ins. Bureau,* 201 C. A. 2d 85, 20 Cal. Rptr. 31 [1962]; *Pierce v. Hartford Accident & Indemnity Co.,* 184 So. 2d 241 [La. App. 1966]; *Rowland v. DAIIE,* 34 Mich. App. 267, 191 N. W. 2d 56 [1971].) Thus, it is the argument of defendant that since these policies were issued prior to the effective date of the mandatory statute, the uninsured motorist coverage provided in the policies was voluntary and should be construed in that light.

Defendant has cited the case of *Sturdy v. Allied Mutual Ins. Co.,* supra, as controlling on this point. It was the first case to come before this court involving uninsured motorist coverage. Prior to reaching the merits of the controversy, we noted:

". . . Many of the cases present different factual situations and some turn on the question whether various policy limitations and exclusions amount to restriction of mandatory statutory coverage. We have no such question as the coverage here is a voluntary type, the insurance contract having been executed prior to the effective date of our recently enacted uninsured motorist law ( K. S. A. 1968 Supp. 40-284, *et seq.* ) . . ." (p. 785.)

The *Sturdy* case, however, is distinguishable on the basis of its facts. The accident giving rise to the insured's claim for uninsured motorist coverage occurred on October 4, 1966, well before the passage of the mandatory uninsured motorist statute in this state. There was no claim in that case that the policy coverage was issued in contemplation of the new mandatory act. From all the evidence it was clear that the uninsured motorist coverage included in the policy was a voluntary type, and not subject to the provisions of the subsequently enacted statute.

In its memorandum decision of May 4, 1973, the trial court discussed the question of the applicability of the mandatory statute to the facts of the instant case. It was the conclusion of the court that the provisions of the policies in question were subject to the mandatory statute and should be construed in conformity with its mandate, despite the fact the policies were issued prior to the effective date of the statute. To fully understand the holding of the trial court it is necessary to review the facts and circumstances surrounding the issuance of the policies.

The policy booklet originally given to Van Hoozer by defendant contained a section on benefits for bodily injury caused by uninsured motorists. Even though the uninsured motorist coverage did not apply to Van Hoozer since he had not purchased that particular coverage, the booklet contained a description of that form of coverage. By the express terms of the policy the limits of liability

for uninsured motorist coverage at that time were $5,000 per person and $10,000 per accident. Under the same coverage an exclusion was included reducing the amount payable by the amount received under workmen's compensation law.

On May 7, 1968, defendant mailed an "Avoid Cancellation" notice to Van Hoozer. Some confusion exists as to what took place next. Plaintiff contends, and the trial court so found, that sometime prior to the accident and the purchase of the uninsured motorist coverage on May 15, 1968, Van Hoozer received in the mail from defendant an endorsement "E-42A" and a letter titled "Important Notice" informing him of the recent enactment of the uninsured motorist statute by the legislature. The endorsement notified the insured that the definition of "Uninsured Motor Vehicle" found in the uninsured motorist coverage of the policies was being amended to include a land motor vehicle or trailer where the liability insurer for such vehicle or trailer becomes insolvent within two years after the accident. In addition, the endorsement amended the subrogation condition of the policy. Both changes incorporated in the endorsement had the effect of bringing the policies into compliance with the recently enacted uninsured motorist law which was to become effective on July 1, 1968. (K. S. A. 40-285, 286, 287.)

The notice sent with the endorsement also purported to make changes in the policy in accordance with the provisions of the recently enacted statute, 40-284. It provided in part:

"Important Notice

"If Your Policy Already Provides You With Uninsured Motorists Coverage, Please Disregard This Notice.

"Accidents caused by motorists who are uninsured have been on the increase and therefore, the state legislature recently enacted a law by which Uninsured Motorists Coverage would be added to your policy, if it contained motor vehicle liability insurance.

"Uninsured Motorists Coverage is designed to afford protection when you, persons riding with you, or relatives residing in your household sustain bodily injury in accordance with the provisions of the coverage, as a result of an accident with an uninsured motorist or a hit-run driver, if he is legally responsible for such injury. We are, therefore, adding Uninsured Motorists Coverage to your policy unless you state in writing that you reject such coverage."

Defendant claims these two documents were not forwarded to Van Hoozer until after the coverage was purchased, and that the trial court was mistaken in finding to the contrary. Defendant concedes it initially admitted these documents were delivered to

Van Hoozer prior to his death, but it claims subsequent evidence indicated the documents were not mailed by defendant's office until after Van Hoozer's death. The trial court permitted defendant's offer of proof on this matter over plaintiff's objection, after which the court ruled *inter alia*:

". . . [T]o permit the Defendant to amend, change its legal position at this time would result in substantial prejudice to the plaintiff for the reason that plaintiff and the Court has relied upon the Answers filed herein by the Defendant, upon the Request for Admissions, and upon the Stipulations of the parties."

We believe the trial court was correct in its finding. The record discloses that in its answer to the amended petition defendant admitted the documents were forwarded to Van Hoozer prior to his death. The later evidence offered by defendant to contradict this was inconclusive and did not justify a change in defendant's position at that late stage in the proceedings. Defendant is bound by its earlier admission. (*Fairlawn Plaza Development, Inc., v. Fleming Co., Inc.*, 210 Kan. 459, 502 P. 2d 663.)

On the morning of May 15, 1968, Van Hoozer went to the office of defendant's agent at which time he purchased, among other things, the uninsured motorist coverage for the two policies. He was charged additional premiums for the uninsured motorist coverage and was given a receipt. The agent also gave Van Hoozer an endorsement increasing the limits of liability for bodily injury caused by uninsured motorists. The endorsement, labeled "E-38", provided as follows:

"Endorsement Increasing Limits of Liability for Bodily Injury Caused by Uninsured Motorists.

"The limits of liability stated in the policy as applicable to Benefits for Bodily Injury Caused by Uninsured Motorists are deleted and the following limits substituted therefor:

"bodily injury $10,000 each person;

"$20,000 each accident

"This endorsement becomes part of the policy to which it is attached and supersedes and controls anything in the policy contrary hereto, but is otherwise subject to the declarations, insuring agreements, exclusions and conditions thereof."

Based on this evidence the trial court ruled as a matter of law that K. S. A. 40-284 was applicable to the Van Hoozer policies. The trial court reasoned that the defendant insurance company clearly regarded the endorsement increasing the limits of liability for bodily injury caused by an uninsured motorist as complying with 40-284 and subject to its provisions. Moreover, the court felt the "Impor-

tant Notice" and the endorsement "42-A" demonstrated the attempt by defendant to comply with the provisions of the new mandatory statute.

After considering the facts and circumstances surrounding the issuance of the policies we reach the same conclusion as the trial court. As previously stated, the uninsured motorist coverage was purchased by Van Hoozer after passage of the bill requiring insurance companies to offer uninsured motorist coverage. Van Hoozer purchased uninsured motorist coverage from defendant for a three-month period during which time the mandatory statute became effective. At no time did defendant indicate to Van Hoozer that the coverage he was purchasing was in any way different from, or more restrictive than, the coverage which was to become mandatory during the terms of the policies. The notice sent to Van Hoozer prior to his purchase of the uninsured motorist coverage referred specifically to the newly enacted statute and it stated that the insurance company would add the new uninsured motorist coverage to the policy unless rejected in writing by the insured. This was obviously done by defendant in anticipation of the new statute. Similarly, the amended definition and the subrogation condition incorporated in endorsement "42-A" were clearly an attempt to conform the company's policies with the provisions of K. S. A. 40-285, 286, and 287.

At the time the coverage was purchased by Van Hoozer, he was given nothing to describe the extent of coverage other than endorsement "E-38." This document increased the limits of liability to $10,000 per person and $20,000 per accident as required by the mandatory statute. Again, this represents an attempt by defendant to bring its policies into conformity with the legislative enactment.

Van Hoozer paid additional premiums for this coverage and he should receive the benefits for which he paid. In a similar situation a California district court of appeals laid down the following rule of law in holding that a financial responsibility statute was applicable to an accident occurring prior to the effective date of the statute:

"An endorsement to an automobile liability policy increasing the amount of coverage in anticipation of a statutory increase in the required amount of financial responsibility, construed in the light of a notice sent by the insurer to the insured and of an increased premium charged, effected an increase also in the amount of the uninsured motorist accident coverage, although the accident in question took place before the statute actually went into effect."

(*White v. Farmers Ins. Exchange,* 207 C. A. 2d 667, Headnote ¶ 1, 24 Cal. Rptr. 755 [1962].)

Defendant argues that it should not be penalized for attempting to comply with or anticipate the law. We do not regard the trial court's holding as penalizing defendant. Where an insurance company issues coverage in anticipation of a new statute and receives increased premiums thereby, it seems only fair that such company should be bound by the terms of coverage purchased by the insured. Here, defendant issued the uninsured motorist coverage to Van Hoozer in compliance with the recently enacted statute and the policies should be construed in accordance with its provisions. The trial court did not err in concluding that K. S. A. 40-284 was applicable to the policies in question.

II. Workmen's Compensation Benefits Exclusion

Having established that the uninsured motorist statute, K. S. A. 40-284, applies to the policies, the effect of the statute must be determined with relation to the policy defenses raised by defendant. Prior to commencement of suit it was defendant's sole contention that plaintiff's recovery should be reduced by the amount received from workmen's compensation benefits. Defendant originally refused on this ground to make payments under the uninsured motorist clauses contained in the policies. Later, defendant amended its position to include additional policy defenses. Here, we are concerned only with the validity of the policy provision reducing the loss payable under the uninsured motorist coverage by the amount received in workmen's compensation benefits.

Defendant's argument on this point was based mainly on the assumption that the uninsured motorist statute was not applicable. It contends the provision of subsection (c) of limits of liability under Part II of the policy is a valid contract provision which should be given effect to reduce any amounts payable under the policy by the $14,000 workmen's compensation award paid to plaintiff. Both policies provided:

"Any loss payable to any person under the terms of this Part II shall be reduced by the amount paid and the present value of all amounts payable to him under any workmen's compensation law, disability benefits law or any similar law."

The trial court held the foregoing provision which attempted to reduce the uninsured motorist coverage limits was void and contrary to public policy of this state.

We agree with the trial court. A mandatory uninsured motorist

statute is remedial in nature and it should be liberally construed to fulfill its intended purpose. (*Forrester v. State Farm Mutual Automobile Ins. Co.*, 213 Kan. 442, 517 P. 2d 173.) In *Clayton v. Alliance Mutual Casualty Co.*, 212 Kan. 640, 512 P. 2d 507, we were confronted with various policy provisions which purported to place requirements on the insured as a condition precedent to the commencement of an action to recover damages under an uninsured motorist endorsement. By applying the provisions of K. S. A. 40-284, we held that insurance policy provisions which purport to condition, limit, or dilute the unqualified uninsured motorist coverage mandated by the statute are void and of no effect. The same is true of a policy provision similar to that in the instant case which attempted to reduce the uninsured motorist coverage by the amount of workmen's compensation benefits. Such a clause is inconsistent with the purpose of the mandatory statute and falls within the proscription announced in *Clayton.*

For cases from other jurisdictions holding that setoff provisions for workmen's compensation such as those contained in defendant's policies were void, see: *Peterson v. State Farm Ins. Co.*, 238 Or. 106, 393 P. 2d 651 (1964); *State Farm Mutual Automobile Ins. Co. v. Cahoon*, 252 So. 2d 619 (Ala. 1971); *Mason v. Allstate Insurance Company*, 189 So. 2d 907 (Fla. 1966); *Booth v. Seaboard Fire & Marine Insurance Company*, 431 F. 2d 212 (8th Cir. 1970); *Aldcroft v. Fidelity & Casualty Co.*, 106 R. I. 311, 259 A. 2d 408 (1969). See also, 24 A. L. R. 3d Anno., Uninsured Motorist—Compensation, p. 1369. In *Peterson,* the court illustrated the reasoning behind the conclusion that such provisions are against the public policy and unenforceable:

". . . Insurance policy provisions imposing a lesser obligation on the insurer than that required by statute are unenforceable. . . .

"In this case the insurance is required by statute. The statute requires the insurer to assume the obligation to provide coverage for an insured who is legally entitled to recover damages from an uninsured motorist because of injuries or death. The statute requires that the extent of this protection, i. e., limits, be not less than in policies listed as proof of financial responsibility. The Financial Responsibility Act requires limits of $5,000 for injury or death to one person, and $10,000 for injury or death to two or more persons. ORS ch. 486. The legislature did not further describe the coverage of the statute. However, we note that the Financial Responsibility Act, referred to specifically in the uninsured motorist provision, contains no provision regarding the effect of the receipt of workmen's compensation benefits by the injured party.

"1. The basic purpose of the uninsured motorist provision seems clear. It provides protection for the automobile insurance policyholder against the

risk of inadequate compensation for injuries or death caused by the negligence of financially irresponsible motorists. . . .

"If the motorist who injured the plaintiff in this case had been insured, the amount of plaintiff's recovery from that insurer would not have been reduced by the amount of any workmen's compensation benefits received by the plaintiff. . . ." (pp. 110, 111, 112.)

We conclude the policy provisions purporting to reduce the amounts payable under the uninsured motorist coverage by the amount of workmen's compensation benefits were invalid and unenforceable.

III. Stacking of Policies

"Stacking," in connection with uninsured motorist coverage, refers to the right to recover on two or more policies in an amount not to exceed the total of the limits of liability of all policies up to the full amount of the damages sustained. In *Sturdy v. Allied Mutual Ins. Co.,* supra, we permitted "stacking" of uninsured motorist coverage on two automobiles insured in the same policy when the insured was injured while riding a non-owned motorcycle. Defendant argues the facts in *Sturdy* are distinguishable from the case at bar, emphasizing that here Van Hoozer was occupying one of the insured vehicles (the Jaguar), and not a non-owned vehicle. Reference is made to definitions in Part II of the Volkswagen policy:

"The definitions under Part I, except the definition of 'insured', apply to Part II, and, in addition, the following definitions also apply:

"(1) Insured. The unqualified word 'insured' means:

"(a) the named insured or a relative (i) while occupying the described automobile or a non-owned automobile, provided the actual use of such automobile is with the permission of the owner, or (ii) if struck by an uninsured motor vehicle while not occupying any other motor vehicle; . . ."

Defendant concedes coverage under the Jaguar policy, but claims the Volkswagen policy affords no coverage to Van Hoozer because when he received his fatal injuries he was not occupying the insured Volkswagen nor was he occupying a non-owned automobile with the permission of the owner. In short, defendant maintains Van Hoozer was not an insured under the policy covering the Volkswagen.

Plaintiff claims this argument is in conflict with the uninsured motorist coverage required by the mandatory statute in that the policy provisions attempt to condition, limit, or dilute the uninsured motorist coverage provided in the statute. (*Clayton v. Alliance Mutual Casualty Co.,* supra.) Plaintiff also relies on the ruling in

*Forrester v. State Farm Mutual Automobile Ins. Co.,* supra, wherein we said:

"We hold that plaintiff as an insured under the policy is an insured within the meaning of the statute and that the exclusion operates to annul the coverage mandated therein, thus, the exclusion is void with respect to a person in plaintiff's position. We do not determine herein the limits of the power of defendant, within statutory authority, to predetermine who is to be an insured. Our holding is limited to the facts herein that where an insured, in an insured automobile, is injured by an uninsured motorist the coverage mandated by the statute precludes his exclusion." (pp. 451, 452.)

In both *Clayton* and *Forrester* we were dealing with exclusionary clauses while here defendant relies on policy definitions of the "insured." Plaintiff argues this is an attempt to accomplish indirectly that which, according to *Forrester*, is prohibited by the statute. Also, she argues that defendant, by a process of step-by-step refinement of the definition of "insured," is excluding from coverage those who are otherwise insureds within the meaning of the statute, including the "named insured." Plaintiff points out that Thomas H. Van Hoozer was the "named insured" in the declarations sheets of both policies. The policies extended uninsured motorist coverage to the "insured" and did not expressly indicate that a "named insured" might not be the "insured" under certain circumstances. The definition of "insured" as interpreted by defendant by a process of elimination or exclusion, would not include the "insured" while occupying an automobile other than the described automobile or a non-owned automobile. Thus, defendant has attempted to accomplish by way of a restrictive definition of the term "insured" what was prohibited in *Forrester*. We conclude the position taken by this court in *Clayton* and *Forrester* is consistent with the argument advanced by plaintiff. Although we stated in *Forrester* that an insurer has the right to predetermine who is to be an "insured," a definition in a policy cannot be so confining that a "named insured" can be eliminated as an "insured" under the policy. Thomas H. Van Hoozer, being a "named insured" in both policies, was the "insured" within the mandate of the statute.

Defendant also argues stacking should not be permitted by reason of the language found in Condition 7 of the policy, which reads:

"(7) OTHER INSURANCE IN THE COMPANY

"With respect to any occurrence, accident or loss to which this and any other insurance policy or policies issued to the insured by the Company also apply, no payment shall be made hereunder which, when added to any amount paid or payable under any such other insurance policy or policies, would re-

sult in a total payment to the insured or any other person in excess of the highest applicable limit of liability under any one such policy."

Defendant contends the foregoing language is clear and unambiguous as to the intention of the parties with respect to stacking of coverage and should be given effect. We considered a similar provision in *Clayton* and concluded that "such clause is void and of no effect, as being in violation of the plain terms of the statute." (p. 650.) The rationale of *Clayton* was based on the following language from *Van Tassel v. Horace Mann Mutual Ins. Co.,* 296 Minn. 181, 207 N. W. 2d 348 (1973):

"It seems to us that, in spite of the attempt by the insurer to limit its liability to one policy or to the amount recoverable under one policy, the fact that the legislature required an uninsured-motorist provision in all policies, added to the fact that a premium has been collected on each of the policies involved, should result in the policyholder's receiving what he paid for in each policy, up to the full amount of his damages. It is true that such holding results in permissible recovery exceeding what he would have received if the uninsured motorist had been insured for the minimum amount required under our Safety Responsibility Act. But if the question must be resolved on the basis of who gets a windfall, it seems more just that the insured who has paid a premium should get all he paid for rather than that the insurer should escape liability for that for which it collected a premium." (p. 187.)

In the instant case, Van Hoozer paid for two separate uninsured motorist coverages. It is only fair that plaintiff be permitted to recover under both policies. Accordingly, we hold the trial court did not err in allowing the stacking of the two policies.

IV. Construction of "Legally Entitled to Recover"

Defendant contends plaintiff's failure to file a claim in the estate of the uninsured motorist within the applicable period of limitations precludes a finding that the insured was "legally entitled to recover" from the operator of the uninsured vehicle. Defendant's argument proceeds on the theory the policy provisions requiring the insured to be "legally entitled to recover" should be interpreted to require that suit must be filed against the uninsured motorist or his estate within the period allowable for wrongful death actions.

The uninsured motorist statute, K. S. A. 40-284, which we have heretofore determined to be applicable to the facts of this case, contains a provision similar to that found in the policies. The statute requires all automobile liability insurance policies to provide for "payment of part or all sums which the insured or his legal representative shall be legally entitled to recover as damages from the uninsured owner or operator of the motor vehicle." We

have recently construed this provision of the new statute by holding that the phrase "legally entitled to recover" means an insured must be able to establish fault on the part of the uninsured motorist which gave rise to the damages and to prove the extent of those damages, but it is not necessary that judgment first be obtained against the uninsured motorist in order to recover against an uninsured motorist liability carrier. We also held that an action could be maintained against an insurer without joining the uninsured motorist. (*Winner v. Ratzlaff*, supra.) Accordingly, the trial court was correct in ruling that plaintiff could maintain an action in contract directly against the uninsured motorist insurance carrier and the five-year statute of limitations on written contracts as prescribed by K. S. A. 1975 Supp. 60-511, was applicable.

V. Sufficiency of Proof of Uninsured Motorist

At the hearing on September 14, 1973, the trial court ruled as a matter of law that the driver of the other vehicle, Downey, was an uninsured motorist. Defendant now contends there was not sufficient evidence to justify that ruling. The evidence offered by plaintiff in support of her motion, and subsequently relied on by the trial court, consisted of a journal entry of the summary closing of Downey's estate as well as certain admissions by defendant. The journal entry contained the probate court's finding that "after a diligent search, the administrator has not found any assets or property belonging to the decedent nor has he uncovered any automobile liability insurance policies providing coverage for the decedent." The admission relied on by the court consisted of an answer to an interrogatory wherein defendant indicated one of its agents was informed by Downey's mother that her son was single and to the best of her knowledge uninsured. The court took judicial notice of both items of evidence and ruled there was no genuine issue of any material fact as to whether Downey was an uninsured motorist. At no time did defendant produce any evidence tending to show that Downey was insured.

The question of the burden of proof to establish that a motorist is uninsured is one of first impression with this court. The majority of jurisdictions which have considered the question have consistently placed the initial burden of proving the motorist was uninsured on the claimant. Mindful of the difficulty of proving a negative, many courts have relaxed the burden by adjusting the quantum of proof necessary. For a discussion of the nature of the problem and an analysis of the recent decisions, see Widiss, A

Guide to Uninsured Motorist Coverage, § 2.39, p. 77. Typical of the reasoning adopted by many courts is the following statement in *Mtr. of Merchants Ins. Co. (Schmid)*, 56 Misc. 2d 360, 288 N. Y. S. 2d 822:

"Since the absence of insurance upon the offending vehicle and its driver is a condition precedent to the applicability of the uninsured driver indorsement, we hold that the burden of proving such absence is upon the claimant. However, we must keep in mind that proving a negative is always difficult and frequently impossible and that, consequently, the quantum of proof must merely be such as will convince the trier of the facts that all reasonable efforts have been made to ascertain the existence of an applicable policy and that such efforts have proven fruitless. In such an event, and absent any affirmative proof by petitioner, the inference may be drawn that there is in fact no insurance policy in force which is applicable." (pp. 362, 363.)

In the instant case, plaintiff has offered evidence of defendant's investigation into the matter as well as the efforts of the administrator of Downey's estate. Both sources stated they were unable to locate any insurance policies of the deceased. Under the circumstances, plaintiff has made a "reasonable effort" to uncover any policies held by the deceased and in the absence of any evidence to the contrary we must conclude the deceased, Sammy Downey, was an uninsured motorist. There was substantial competent evidence to support the finding of the trial court.

VI. Admission of Evidence

Further error is predicated on the refusal of the trial court to admit evidence of the purchase of life insurance by the deceased, Thomas H. Van Hoozer. At a hearing out of the presence of the jury, defendant made an offer of proof that on the morning of the fatal accident, Van Hoozer not only renewed his automobile liability policies and added uninsured motorist coverage, but he also purchased a $15,000 accidental death policy. The trial court rejected the offer of proof and refused to permit any evidence of the purchase of life insurance on the ground it was irrelevant as a matter of law. Thereafter, the court did permit defendant to present evidence that in March, 1968, Van Hoozer learned from his physician that he had chronic leukemia. The evidence was admitted as being relevant to the condition of his health and life expectancy for the purpose of arriving at an award of damages.

Defendant does not dispute that the evidence of the purchase of life insurance would have been inadmissible on the issue of damages, but it claims the proffer was relevant to the issue of the deceased's contributory negligence. Defendant argues that when the

fact the deceased purchased life insurance two hours before his death is coupled with the circumstances of the accident and evidence that deceased knew he had chronic leukemia, it then became relevant to the issue of his contributory negligence and should have been admissible in evidence. Relevant evidence is statutorily defined as evidence having any tendency in reason to prove any material fact. (K. S. A. 1975 Supp. 60-401 [b].) Unless provided otherwise, all relevant evidence is admissible. (K. S. A. 60-407 [f].) Defendant acknowledges that under K. S. A. 60-445 a trial judge has the discretion to exclude relevant evidence, but it argues this is expressly limited to the circumstance where the probative value of the evidence is outweighed by the risk of surprise. 60-445 reads as follows:

"Except as in this article otherwise provided, the judge may in his discretion exclude evidence if he finds that its probative value is substantially outweighed by the risk that its admission will unfairly and harmfully surprise a party who has not had reasonable opportunity to anticipate that such evidence would be offered."

This section refers only to the element of surprise as a ground for excluding admissible evidence. Nevertheless, it has been recognized as a rule of necessity that the trial court may exclude any evidence which may unfairly prejudice a jury. (*State v. Davis*, 213 Kan. 54, 515 P. 2d 802; *State v. Whiters*, 206 Kan. 770, 481 P. 2d 992.) It is the law of this state that even though evidence is relevant it should be excluded if its probative value is outweighed by its prejudicial effect. (See Gard, Kansas Code of Civil Procedure Annotated, § 60-445, p. 432.)

After examining the entire record we are satisfied the trial court did not abuse its discretion by refusing to admit the challenged evidence. The purchase of life insurance is entirely consistent with the desire to live and it normally does not show an inclination to commit suicide. Especially is this true under the facts of this case where the undisputed evidence revealed the decedent was struck head-on by a drunken driver who was traveling in the wrong direction on a four-lane interstate highway. Whatever probative value might be attached to the purchase of life insurance was surely outweighed by the harm likely to result from informing the jury of additional benefits received by plaintiff.

VII. Instructions

During trial defendant objected to the giving of several instructions as they applied to the facts of the case. Defendant did not

dispute the fact the instructions given were accurate statements of the law, but claimed they operated to "obstruct" its theory of contributory negligence.

Error cannot be predicated on the refusal to give an instruction when its substance is adequately covered in other instructions. (*Grohusky v. Atlas Assurance Co.*, 195 Kan. 626, 408 P. 2d 697.) The purpose of instructions is to inform the jury of the law governing all issues joined by the pleadings on which evidence is adduced and to advise the jury as to the verdict it may render. When testing the sufficiency of an instruction, the instructions must be considered in their entirety. (*Culwell v. Abbott Construction Co.*, 211 Kan. 359, 506 P. 2d 1191; *Langley v. Byron Stout Pontiac, Inc.*, 208 Kan. 199, 491 P. 2d 891.) In instruction No. 6, the court advised the jury that it was for them to decide from the evidence whether the duties or laws which would follow applied in this case. It proceeded to instruct the jury as to the meaning of negligence, contributory negligence and direct cause. In instruction No. 10, the court informed the jury of the common law duty of a driver. The instruction as given was taken verbatim from PIK [Civil] 8.02 and it reads as follows:

"It is the duty of a driver on a public highway to keep his vehicle under proper control and drive within the range of his vision so that his vehicle may be stopped, slowed, or turned aside and thus avoid colliding with any other vehicle lawfully using the highway."

Defendant objects to the use of the word "lawfully" in the instruction under the circumstances of this case where it is admitted the driver of the other vehicle was using the highway in an unlawful manner. Defendant claims the word "lawfully" necessarily implies that a driver owes no common law duty to one who is driving in an unlawful manner. We cannot agree with defendant's interpretation of the language of the instruction. Even though the instruction given by the court emphasizes a driver's duty in relation to other vehicles lawfully using the highway, when considered with other instructions it does not imply that a driver has no duty to vehicles unlawfully using the highway. The jury was elsewhere instructed as to defendant's theory of contributory negligence and the duty of the decedent to maintain a proper lookout and control to avoid collision with the Downey vehicle.

The instructions given to the jury were accurate statements of the law and when considered in their entirety we find no error.

VIII. Cross-Appeal on Attorneys' Fees

By way of cross-appeal plaintiff raises the issue of whether the trial court erred in denying her motion for the assessment of attorneys' fees. K. S. A. 40-256 permits the award of attorney fees in actions on insurance policies if the trial court finds the insurance company refused without just cause or excuse to pay the full amount of the loss. Whether attorney fees are to be allowed depends on the facts and circumstances of each particular case. (*Sturdy v. Allied Mutual Ins. Co.*, supra; *Forrester v. State Farm Mutual Automobile Ins. Co.*, supra.) The trial court held attorneys' fees were not recoverable in the instant case for the reason there existed a good faith legal controversy.

Plaintiff argues the policy defense relied on by defendant prior to commencement of litigation was clearly unfounded. As previously noted, defendant originally based its refusal to pay on the policy exclusion relating to the reduction of benefits by the amount of workmen's compensation received. Although defendant was notified by the insurance commissioner prior to trial that its defense would not be valid under the new uninsured motorist statute, there was substantial cause for defendant to believe the new statute would not apply since it did not become effective until after the accident. We have heretofore demonstrated the error in defendant's reasoning. Yet, the misconception upon which defendant based its refusal was not such that would indicate an arbitrary, capricious or bad faith motive. The question of the application of the uninsured motorist statute to an accident occurring prior to its effective date was one of first impression in this state. We cannot say defendant refused plaintiff's claim without just cause or excuse.

We recognize other arguments advanced by plaintiff as to waiver of defenses, but they need not be considered in view of the disposition of the case on other grounds. The judgment of the trial court on matters raised by defendant's appeal and plaintiff's cross-appeal is affirmed.

FROMME, J., not participating.