(601 P.2d 1172)
No. 50,273

MARIE R. BURKE, *et al., Plaintiffs-Appellees,* v. KATHERYN SCHROTH, *et al., Defendants-Appellees and Third-Party Plaintiffs,* v. THE BOARD OF COUNTY COMMISSIONERS OF HODGEMAN COUNTY, KANSAS, *et al., Third-Party Defendants-Appellees,* TOWN AND COUNTRY INSURANCE COMPANY, *Intervenor-Appellee,* NATIONAL FARMERS UNION PROPERTY & CASUALTY COMPANY, *Intervenor-Appellant.*

Opinion filed November 2, 1979.

*Christopher Randall,* of Turner & Boisseau, Chartered, of Wichita, for appellant.

*Gerald W. Scott,* of Matlack, Foote, Scott, Joseph & Wilkinson, P.A., of Wichita, for appellees.

Before FOTH, C.J., PARKS and MEYER, JJ.

MEYER, J.: This action arises out of a May 24, 1975, automobile accident which occurred on a county road in Hodgeman County between autos owned by the Hodgeman County Highway Department and Raymond and Linda Neilson. Meinard Meier was operating the county vehicle and his passengers were James Meier (his son) and Leo Burke. Katheryn Schroth was driving the

Neilson vehicle and Linda Neilson was her passenger. The present suit was filed May 18, 1977, by the Meiers and by Burke's heirs (Burke died December 2, 1976, apparently not as a result of this accident) against Schroth and the Neilsons. The defendants filed a third party action against the Board of County Commissioners alleging that the cause of the accident was a defective road.

During discovery, plaintiffs sought information on any insurance policies of defendants. The answers to interrogatories were that the Schroths had no insurance "which would cover the above captioned action." The Neilsons replied that they had been "advised" that their insurance had lapsed prior to the accident for failure to pay premiums and that coverage was denied.

On petition for intervention, National Farmers Union Property and Casualty Company (National Farmers), insurer of plaintiff Meier, and Town and Country Insurance Company, insurer of plaintiff Burke, were allowed to intervene for the purpose of discovery concerning insurance coverage. National Farmers filed its answer September 21, 1977, denying that the defendants were negligent, denying that the defendants were uninsured motorists, and requesting that plaintiffs take nothing by their prayer. There was no prayer for affirmative relief nor for indemnity from defendants.

Plaintiffs clearly stated their intention not to assert a claim against the insurance companies on their uninsured motorist clauses in this action in a letter dated June 22, 1977, and during the pendency of several motions. The insurance companies deposed defendants and concluded that defendants were in fact uninsured motorists.

Plaintiffs then filed their motion to dismiss without prejudice which was sustained May 2, 1978. The defendants and third-party complainants filed an agreed order of dismissal of their action. National Farmers appeals the dismissal on the ground that the dismissal prejudiced their legal right of subrogation against defendants, as the statute of limitations had run against their claim.

On August 8, 1978, suit was filed in federal district court in Wichita on behalf of Meinard Meier against National Farmers on the uninsured motorist provisions of the policy issued by the insurer.

Since this suit was dismissed, National Farmers will have no recourse against defendants due to the tort statute of limitations having run. They would have a remedy if this action were continued until such time as the plaintiffs were paid and the insurance company thereby became subrogees, and they could then recover from defendants since plaintiff's suit was timely filed. The federal suit, however, was filed after the two-year tort statute of limitations had run, applicable to the insurance company's subrogation suit, but before the five-year contract statute of limitations had run applicable to the direct action against the insurance company on their uninsured motorist coverage. The question is whether this situation constitutes such legal prejudice against National Farmers that the trial court abused its discretion in dismissing the suit in state court.

K.S.A. 60-241(*a*)(2) provides in part:

"[A]n action shall not be dismissed at the plaintiff's instance save upon order of the judge and upon such terms and conditions as the judge deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon him of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court."

This section was construed in *Gideon v. Bo-Mar Homes, Inc.,* 205 Kan. 321, Syl. ¶ 3, 469 P.2d 272 (1970), to mean that defendant must suffer some plain legal prejudice other than the prospect of a second lawsuit in order for the court to deny dismissal of an action. Defendant's loss of a statute of limitations on their counterclaim did not constitute plain legal prejudice. An abuse of discretion was therefore found for not dismissing the suit on plaintiff's motion.

While the statute and the case construing it dealt with consideration of defendant's rights in deciding whether to dismiss, other jurisdictions have construed "defendant" to include an intervenor. Under a California statute, the plaintiff may not dismiss an action if the defendant has requested affirmative relief. (Note the similarity to our statute which so provides if a counterclaim has been pleaded by defendant.) In that statute, the term "defendant" was held to apply to an intervenor if he has sought affirmative relief. *In re Mercantile Guaranty Co.,* 263 Cal. App. 2d 346, 69 Cal. Rptr. 361 (1968).

The general rule in most jurisdictions is that when an intervenor seeks affirmative relief against plaintiff or defendant, the

district court is not authorized to dismiss the suit in its entirety on plaintiff's motion, but the intervenor's motion continues on the docket and by reason thereof the court retains jurisdiction over plaintiff and defendant until voluntary dismissal by the intervenor. *State v. Roberson,* 409 S.W.2d 872, 873 (Tex. Civ. App. 1966); *Patterson v. Pollock,* 84 Ohio App. 459, 84 N.E.2d 606 (1948).

An intervention that merely resists the plaintiff's claim does not prevent a dismissal. *Henry v. Vineland Irr. Dist.,* 140 Cal. 376, 73 Pac. 1061 (1903). See also 24 Am. Jur. 2d, Dismissal, Discontinuance, and Nonsuit § 47, p. 39.

Thus, National Farmers' claim of relief from the trial court's dismissal must be on the basis of an affirmative claim. National Farmers has filed no such claim for affirmative relief. In fact, it cannot file any claim for affirmative relief. It cannot file a cross-claim against defendant for indemnity because plaintiff has not filed a claim against the insurance company in this suit. It cannot file a claim against the defendant directly as a subrogee of plaintiff's rights because it is not the real party in interest.

"[T]o obtain the benefit of the doctrine of subrogation, one of the conditions which the insurer must fulfil is payment, or sufferance of a judgment requiring payment, of the obligation owed to the insured, and the mere anticipation that the insurer will make payment of the insured's claim does not entitle it to bring suit on its own behalf as subrogee." 44 Am. Jur. 2d, Insurance § 1848, p. 775.

Kansas has ruled only on the issue of the real party in interest when there has been partial payment or when insured loses real party in interest status after full payment of the claim. See *J. C. Livestock Sales, Inc. v. Schoof,* 208 Kan. 289, 491 P.2d 560 (1971).

Several jurisdictions are listed in 46 C.J.S., Insurance § 1209, p. 153, which adhere to the rule that:

"Insurer's rights to subrogation accrue on payment of the insurance claim; but until payment of the claim on the policy no rights to subrogation accrue."

While the insurer would lose its right of subrogation due to the statute of limitations being longer in plaintiff's action against its insurer under its uninsured motorist clause, that policy decision was made some years ago when it was ruled that plaintiff had five years to sue its carrier on the contract of insurance (*Van Hoozer v. Farmers Insurance Exchange,* 219 Kan. 595, 611, 549 P.2d 1354 [1976]), and that the plaintiff can sue the insurance company

directly without obtaining judgment against the uninsured motorist first. *Winner v. Ratzlaff,* 211 Kan. 59, 505 P.2d 606 (1973).

*Winner v. Ratzlaff* involved a case where it was held that the trial court abused its discretion in *not* allowing plaintiff's motion to dismiss against an uninsured motorist and foreclosing the plaintiff from proceeding in a contract action against the insurance carrier only. However, in that case, the insurance company waived its subrogation rights against the uninsured motorist in order to defend the motorist.

Other jurisdictions have ruled conclusively that the right of subrogation is lost if the tort statute of limitations has run against the insured under the theory that the right of subrogation is purely derivative as the insurer succeeds only to the rights of the insured, and no new cause of action is created. *Amer. States Ins. Co. v. Williams,* 151 Ind. App. 99, 278 N.E.2d 295 (1972). Accord, *State Farm Mut. Auto. Ins. v. Wharton,* 88 Nev. 183, 495 P.2d 359 (1972). Kansas also follows the rule that an insurer claiming the right of subrogation stands in the shoes of its insured, and any defenses good against the insured are likewise good against the insurer. *Shelman v. Western Casualty & Surety Co.,* 1 Kan. App. 2d 44, 562 P.2d 453 (1977).

In other jurisdictions, where the issue is first raised as to what statute of limitations to apply to the action against the insured, insurance companies have repeatedly raised the objection that the insurance company would stand to lose its subrogation rights if the contract statute of limitations exceeded the tort statute of limitations. The courts have unanimously dismissed this argument. See *Sahloff v. Western Casualty & Surety Co.,* 45 Wis. 2d 60, 171 N.W.2d 914 (1969); *La Marsh v. Maryland Casualty Company,* 35 Misc. 2d 641, 231 N.Y.S.2d 121 (1962).

In *Lemrick v. Grinnell Mut. Reinsurance Co.,* 263 N.W.2d 714, 717 (Iowa 1978), it was stated: "If an injustice exists regarding time limits on subrogation suits, the proper avenue would be to the legislature."

Other states have noted the uniform endorsement in many policies. An example of this endorsement is found in *Selected Risks Ins. Co. v. Dierolf,* 138 N. J. Super. 287, 295, 350 A.2d 526 (1975):

"After notice of claim under this endorsement, the company *may* require the insured to take such action as may be necessary or appropriate to preserve his right

to recover damages from any person or organization alleged to be legally responsible for the bodily injury ***[Emphasis supplied]."

Thus, the courts have held that when an insurance company sits on these rights, it cannot be heard to complain when the statute of limitations runs against it. *Selected Risks Ins. Co. v. Dierolf,* 138 N. J. Super at 296.

As was noted in *Sahloff v. Western Casualty & Surety Co.,* 45 Wis. 2d at 71:

"We think this argument overrates the importance of subrogation because an uninsured motorist tends to be financially irresponsible and a subrogation right against such a person is not worth very much."

Since National Farmers has asserted no claim for affirmative relief and the fact that it is more the operation of the respective statutes of limitations rather than the dismissal which prejudices intervenor's dubious right of subrogation, the trial court did not abuse its discretion in dismissing plaintiff's action. In *Gideon v. Bo-Mar Homes, Inc.,* 205 Kan. 321, Syl. ¶ 3, it was stated:

"It is no bar to dismissal that the plaintiff may obtain some tactical advantage by such dismissal, or that the defendant may lose the defense of a period of limitation."

The loss of the subrogation right through operation of the statutes of limitations is not the type of legal prejudice contemplated by the court in *Gideon* which would prevent dismissal.
Affirmed.